Filed 9/23/25  P. v. Mitchell CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101253 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE001403) |
| v. | |
| CHARLES MAGIC MITCHELL, | |
| Defendant and Appellant. | |

Defendant Charles Magic Mitchell pled no contest to robbery and assault after he and another inmate took a third inmate's commissary package.  Pursuant to a plea agreement, the trial court sentenced defendant to 27 years in state prison (which included two years for a separate case not relevant here).  In 2023, the trial court resentenced defendant under Penal Code[1] section 1172.75, and struck only a one-year prior prison term enhancement, finding that defendant remained within the spirit of the Three Strikes law and posed a danger to public safety.

On appeal, defendant argues that the trial court did not exercise informed discretion in his resentencing.  He further argues that resentencing him to the upper term

---

[1] Further undesignated section references are to the Penal Code.

1

in the absence of a jury trial violated his constitutional rights. Finally, he contends his counsel provided him with ineffective assistance of counsel by failing to advance several arguments at sentencing. We will affirm.

BACKGROUND

The information alleged that defendant committed second-degree robbery and assault by means of force likely to produce great bodily injury on January 12, 2016. (§§ 211, 245, subd. (a)(4).) As to both counts, the information alleged that defendant participated in a criminal street gang (§ 186.22, subd. (b)(1)). The information further alleged defendant had three bases for sentence enhancement: a strike prior, a five-year serious felony prior, and a one-year prior prison term. (§§ 667, subds. (a) & (e)(2), 667.5, subd. (b), 1170.12, subd. (c)(2).)

The factual basis for defendant's plea was: "[O]n or about January the 12th of 2016, . . . [defendant], while in custody . . . approached the victim . . . along with his codefendant, . . . [and] made demands of property from [the victim], who had a bag of commissary that [defendant] and [codefendant] believed they were entitled to. When [the victim] refused to hand over his property, . . . [defendant] and [codefendant] began striking [the victim] multiple times," and took the victim's property.

Defendant agreed to plead no contest to robbery (§ 211) and assault (§ 245, subd. (a)(4)) and admitted his prior conviction in exchange for a total sentence in this case of 25 years in state prison: the upper term of six years doubled due to his prior strike for a total of 12 years on the robbery conviction; one-third the middle term doubled for a total of two additional consecutive years on the assault conviction; two five-year enhancements under section 667, subdivision (a); and a one-year enhancement under section 667.5, subdivision (b).

In 2019, defendant pled no contest as agreed, and the trial court sentenced defendant to the stipulated sentence of 25 years in state prison for this case, plus two

2

years in the second unrelated case. The trial court also found defendant had a total of 1,396 days of credits.

In 2023, the California Department of Corrections and Rehabilitation identified defendant as eligible for resentencing under section 1172.75. Defendant filed a motion setting forth the facts of the underlying crime and providing his background and work in prison. Defendant informed the trial court he grew up as a middle child in a six child home, was raised by a drug addicted mother, had an absent father, and his neighborhood was rife with gangs and violence. Defendant submitted a social study report supporting his family and home life. As an adult, defendant is married and has two children. He has been taking courses in prison, working on his GED, and was employed at the prison.

Defendant admitted that as an adult, he had three felony convictions and one resisting arrest conviction. (§§ 459, 664/459, 148, subd. (a).) Defendant also informed the trial court of his juvenile record which included a burglary, receiving stolen property, several "VOP's," and a termination of probation.

Defendant asked the trial court to strike his one-year prior prison term enhancement under section 1172.75 and resentence him. In addition, defendant urged the trial court to dismiss his prior strike conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) and under section 1385. Defendant also identified section 1385, subdivision (c), as the basis to dismiss his two five-year enhancements. Specifically, counsel identified the factors identified in subdivisions (c)(2)(a), (c)(2)(b), (c)(2)(d), and (c)(2)(g) of section 1385 as relevant to this argument: (1) multiple enhancements; (2) enhancements that could result in a sentence over 20 years; (3) the current offense was connected to childhood trauma; and (4) enhancements based on prior convictions that are over five years old.

Defendant proposed two alternative sentencing scenarios. First, he asked the trial court to strike his prior strike conviction pursuant to *Romero*, sentence him to the upper term of five years for second degree robbery, reimpose the consecutive two-year sentence

on the assault charge, and strike both five-year prison enhancements, for a resulting sentence of seven years. Alternatively, defendant asked the trial court to sentence him to the low term for the robbery, one-third of the low term on the robbery doubled, and resentence him to the two five-year serious felony enhancements for a total sentence of 15 years 4 months.

In response, the People agreed the trial court must strike the one-year prior prison term enhancement. The People argued the trial court could not dismiss the defendant's strike under section 1385, subdivision (c). As to the remainder of defendant's requests, the People argued the trial court should resentence defendant as it had originally as dismissal of any of the enhancements would endanger public safety. The People asserted defendant's criminal history and rule violations in custody (including fighting, battery, possession of controlled substance, and failure to meet work expectations or perform assigned work) supported their request. The People also presented the trial court with evidence that in May 2023, defendant and two other inmates ganged up on a fourth inmate and struck the victim repeatedly in the head and upper torso with closed fists.

During oral argument, defense counsel informed the trial court, "I want to just note for the record that my client will be filing a habeas under the Racial Justice Act. Looking into the disparate treatment regarding the charging and sentencing choices made by the People's office in 2015, but he would like to proceed, of course, with the resentencing today." In his argument under section 1385, subdivision (c), that the enhancements were the result of racial discrimination, counsel stated, "The first is that application of this enhancement results in discriminatory racial impact. I have with me, if the Court and counsel wish to have a copy of the 2018 report of the Judicial Council of the disposition of cases from that time period when [defendant] was sentenced, noting racial disparities, noting that black individuals made up 19.5 percent of felony defendants, and were only 5.7 percent of the total California population. [¶] Noting that in felonies blacks received more prison sentences than whites. Estimated to be 5.4

4

percent more likely to receive felony convictions as whites. They noted that prison sentencing was 13.5 percent more likely. [¶] That year, that report that came out four months after [defendant] was sentenced said that controlling for all of the legal factors such as types of offense, prior record, the study found that race is still significantly associated with rates of conviction, rates of felonies, and impositions of prison sentences." Defense counsel also asked the trial court to strongly consider whether the "current offense is connected to prior victimization or childhood trauma."

After the parties concluded their arguments, the trial court stated, "So in reviewing the documentation as submitted, I did note in terms of [defendant's] prior record, and I understand that a person is more than their criminal record. But, for the record, it's somewhat problematic. [¶] In 2004, he was made a ward of the juvenile court, it looks like for receipt of stolen property. There were multiple violations of probation which he received 30 days . . . [in] juvenile hall. [¶] He picks up his first strike or a strike on a first degree burglary in 2007, another violation of probation. [¶] Another first degree in 2008, a violation of probation in 2009, resisting arrest in 2010, and attempted first degree burglary which he is ultimately sent off to state prison in 2011, another first degree burglary. It looks like actually it is the same–it is different case numbers, so the conviction date is the same, but it looks like different sentencings for separate charges. And then his current offense in which he is incarcerated for. [¶] Had he been convicted and given a life sentence, I can't say that I would agree with a life sentence. That I think some of the arguments . . . the defense was making would probably ring more true, but I think in some respects the prosecution is showing their discretion counters some of the arguments that defense has made, and this was a bargained for sentence, essentially plea bargaining around a life sentence. [¶] I can say with some certainty had this happened in the early 2000[']s where I think the prosecution did not show their discretion or exercise their discretion as willingly it would have been a life sentence. [¶] I think [defendant] should be commended for some of his rehabilitative efforts. I think he enjoys strong

5

family support. So that should be noted. [¶] It should be noted, I think, that at least there was a time where the gang enhancements maybe cast too wide a net, but again, as I noted, this was actually a plea bargain that I think his counsel and [defendant] were looking for in an attempt not to be sentenced to essentially what would have been a life without parole sentence if it was 96 years to life. [¶] If that's all I had, I think I would be moved a little bit more for the defense, but my concern is the People have stated is [*sic*] his stay in the state penitentiary has not been flawless. And I understand I am not naive to think that when you're incarcerated that there's not going to be problems because you're not incarcerated with angels. [¶] But the problem I'm having is, for instance, in 2020 failure to meet work expectations. I don't give that much weight. That's just somebody's subjective view that you're not working hard enough, you're not showing up when you're supposed to show up. If that was all it was, I wouldn't be as concerned. [¶] Even fighting. Fighting is mutual combat, and that's prison, and so I don't give that much weight necessarily. I'm more concerned with the possession of a controlled substance. That shows an inability to follow the law or the rules. [¶] But the major problem, I think, is, as the People have stated out as early or recent as May 26, 2023, a three-on-one battery on an inmate. That is exactly the conduct which landed him in state prison. [¶] And so, in my mind, the People have carried the burden of showing. . . [by] clear and convincing evidence that [defendant] still poses. . . a risk to public safety and, for those reasons, I am not going to strike any further sentence enhancements other than the one year. [¶] I still feel he falls within the spirit of at least one additional strike. As I said, if this was a life sentence, I would make it not a life sentence because he is still young. [¶] The underlying offenses are problematic, but they're not the most egregious I've ever seen, but I think the 27 years that we've bargained for as a fair sentence, so the Court will impose 26 years."

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant contends the trial court resentenced him without informed discretion because it ruled before our Supreme Court's decision in *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*).  He also argues the trial court did not understand that several provisions of section 1385, subdivision (c), applied here.  In his supplemental brief, defendant further argues the trial court violated his due process and jury trial rights when it reimposed the upper term without a jury trial, citing *People v. Gonzalez* (2024) 107 Cal.App.5th 312.  Finally, defendant argues his counsel provided ineffective assistance because he failed to advance several other arguments to reduce defendant's sentence.

A.      *Full Resentencing*

Defendant first argues the trial court misapprehended its discretion when it resentenced defendant.  We disagree.

In 2021, the Legislature enacted Senate Bill No. 483 (2021-2022 Reg. Sess.) (Senate Bill No. 483) (Stats. 2021, ch. 728, § 3), which added former section 1171.1, now renumbered as section 1172.75.  (Stats. 2022, ch. 58, § 12.)  (*People v. Burgess* (2022) 86 Cal.App.5th 375, 380.)  Section 1172.75 provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid."  (§ 1172.75, subd. (a).)

After verifying that a judgment contains a prior prison term enhancement that is no longer valid, section 1172 .75, subdivision (c), requires a trial court to "recall the sentence and resentence the defendant" to "a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety.  Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed."  (§ 1172.75, subds. (c), (d)(1).)  At resentencing, "[t]he court

shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) In engaging in that full resentencing, the trial court "may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).) The trial court's oral recitation demonstrates that the trial court considered all of these factors and the sentencing laws advanced by counsel.

A change in law that reduces sentences is section 1385, subdivision (c). Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill No. 81) amended section 1385 to add subdivision (c), which requires a trial court to dismiss sentence enhancements "if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1); Stats. 2021, ch. 721, § 1.) In exercising its discretion under this section, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety*. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2), italics added.) Section 1385, subdivision (c)(2), thus "does not require the trial court to consider any particular factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 299.)

Defendant asserts the trial court's use of " 'clear and convincing' " language means the trial court was misinformed as to how to apply section 1385, and instead used section 1172.75, subdivision (d)(1), to decline to reduce defendant's sentence. He also argues that the trial court's failure to mention the mitigating factors suggests the trial court failed to engage in the proper analysis. We are not persuaded.

The trial court said that "the People have carried the burden of showing [by] clear and convincing evidence that [defendant] still poses . . . a risk to public safety" when it addressed defendant's request to strike the two five-year enhancements. But we conclude that in the context of the briefing, defendant's written request to strike his strike and dismiss his enhancements, the oral argument, and the sentence actually imposed, the trial court clearly found that public safety would be endangered if it dismissed these two five-year enhancements under section 1385, subdivision (c).

" 'The trial court is not required to state reasons for declining to exercise its discretion under section 1385' [citations], and 'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary' [citation]." (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.) We review that decision for an abuse of discretion. (*Ibid.*) "Absent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.)

Here, the trial court stated that it had reviewed the documents submitted. Defendant's motion explicitly sought to dismiss the two five-year enhancements under section 1385, subdivision (c)(2), and informed the trial court that "Proof of one or more of the items from the list []weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." Defendant highlighted each of the relevant items. Thus, defendant squarely framed the question of whether dismissal of the enhancements would endanger public safety as

9

determinative of whether the trial court was required to afford "great weight" to these mitigating factors.

Second, we conclude the trial court properly exercised its discretion because the trial court imposed a lesser sentence (albeit by one year) than the original sentence. Had it resentenced defendant under the standard provided in section 1172.75, subdivision (d)(1), it would not have been required to reduce his sentence at all or evaluate defendant's *Romero* request or his requests to dismiss the two enhancements under section 1385, subdivision (c). Rather, it would have left the sentence as is. However. the trial court reduced the sentence by one year, indicating it was not relying on section 1172.75, subdivision (d)(1), for its decision.

Third, we conclude the trial court did not abuse its discretion because the language employed by the trial court conveys its finding that dismissal of these two enhancements would present a danger to public safety. The trial court explained its finding was based upon its full consideration of defendant's original crime of assaulting his fellow inmate and taking his commissary, his failure to follow prison rules in having possession of a controlled substance in custody, and his further recent beating of another inmate while still in custody. The implicit finding in the trial court's colloquy is that dismissal of these enhancements and an earlier release of defendant would endanger public safety.[2]

Defendant also suggests the trial court failed to analyze whether defendant would be a danger to the public at the future date he was released, should those enhancements have been dismissed. We do not agree.

---

[2] Defendant asserts the fact that he pled no contest pursuant to a plea agreement in exchange for a stipulated sentence did not prevent the trial court from reducing his sentence. The record does not support the argument that the trial court denied his resentencing based on the plea agreement. As noted *ante*, the court considered the plea as one factor while assessing defendant's individual circumstances and declined to change the penalties assessed on the two charges or the two five-year prior serious felony enhancements.

The trial court was required to examine whether defendant would present a danger to the public on the future date he might be released if the trial court struck enhancements from his sentence. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 230-231.) Here, defendant sought a total sentence of seven years with the dismissal of his strike and the two five-year enhancements. He had already served four years of his sentence and had 1,396 days of presentence credit at the time of his 2019 sentencing. Thus, had the court granted defendant the relief he requested, his sentence would have been at or near completion in 2023. The trial court's finding that defendant "still poses a risk to public safety" means he would be a danger now or in the immediate future upon his release.

Defendant also argues the trial court did not exercise its discretion properly because it did not have the guidance of *Walker, supra,* 16 Cal.5th 1024 when it made its decision, and did not engage in the analysis required by that case. *Walker* is of no assistance to defendant here.

In *Walker*, our Supreme Court rejected the idea that when one or more of the enumerated mitigating circumstances of section 1385, subdivision (c), is present, there is a rebuttable presumption in favor of dismissing the enhancement that can be overcome only by a finding that dismissal would endanger public safety. (*Walker, supra*, 16 Cal.5th at pp. 1032-1033.) The *Walker* court held, "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Id.* at p. 1029.) The court emphasized, "in most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,'

notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*Id.* at p. 1033.)[3]

Here, under *Walker*, when the trial court found that dismissal of the enhancements would endanger public safety, the statute did not require the trial court to engage in the great weight analysis required by the statute. *Walker* required nothing more of the trial court in this instance.

B.      *Due Process, Jury Trial Rights*

Defendant next argues the trial court erred in reimposing the upper term without submitting this question to a jury and that we should apply *People v. Gonzalez* (2024) 107 Cal.App.5th 312 to conclude this violated his rights. We disagree.

Section 1172.75, subdivision (d)(4), provides "[u]nless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

In *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 466-467, a different panel of this court concluded the plain language of section 1172.75, subdivision (d)(4), indicated the Legislature "intended the new burden of proof amendments to section 1170, subdivision (b) apply only if the trial court is imposing the upper term for the first time at

---

**3**      In those cases in which the trial court has not concluded that the dismissal of enhancements presents a danger to public safety, the court also clarified what it means for a mitigating circumstance to " 'weigh[] greatly in favor' (§ 1385, subd. (c)(2)) of dismissal." (*Walker, supra,* 16 Cal.5th at p. 1034.) In that instance, a trial court "must 'engage[] in a holistic balancing with *special emphasis* on the enumerated mitigating factors,' in which the mitigating factors weigh 'strongly in favor of . . . dismissal' [citation] . . . . But ultimately, the court must determine whether dismissal is in furtherance of justice." (*Id.* at p. 1036.)

a section 1172.75 resentencing." (*Brannon-Thompson,* at pp. 466-467.)  As such, section 1172.75, subdivision (d)(4), creates "an exception to the general rule that the trial court must apply ameliorative changes in the law at a section 1172.75 resentencing." (*Brannon-Thompson,* at p. 467.)

Here, because the trial court originally imposed the upper term on the principal robbery count, under *Brannon-Thompson*, this resentencing court was permitted to reimpose the upper term on that count during the section 1172.75 resentencing without relying on any aggravating circumstances proven pursuant to section 1170, subdivision (b).

Defendant argues we should not follow *Brannon-Thompson,* but instead should follow *People v. Gonzalez, supra*, 107 Cal.App.5th 312.  We decline this invitation.

The *Gonzalez* court "acknowledge[d] that the plain language of section 1172.75, subdivision (d)(4), on its face, could be interpreted as not requiring proof of aggravating factors before reimposing an upper term sentence." (*People v. Gonzalez, supra,* 107 Cal.App.5th at pp. 328-329.)  The *Gonzalez* court feared, however, "reading an exemption into section 1172.75, subdivision (d)(4), . . . and thereby allowing a court to resentence a defendant to an upper term sentence without proof beyond a reasonable doubt of aggravating factors, would run afoul of the Sixth Amendment implications identified in [*People v. Lynch* (2024) 16 Cal.5th 730, 768]." (*Id.* at p. 330.)

We respectfully disagree with this analysis.  Under the Sixth Amendment, "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt." (*Cunningham v. California* (2007) 549 U.S. 270, 281.)  There is no dispute that, under *Lynch*, the additional factual determinations required to impose the upper term under section 1170, subdivision (b), implicate the Sixth Amendment jury trial right.  As our Supreme Court explained, "under the current statute the aggravating facts used to 'justify' an upper term sentence are 'necessary to [its] imposition,' [citation] and effectively function like elements of a

13

crime." (*People v. Lynch, supra,* 16 Cal.5th at p. 760.) But, section 1172.75, subdivision (d)(4), "carves out an exception" to the factfinding requirements of section 1170, subdivision (b). (*Brannon-Thompson, supra*, 104 Cal.App.5th at p. 458.) Because those requirements do not apply when reimposing the upper term at a section 1172.75 resentencing, the Sixth Amendment is not implicated. (See *Lynch,* at p. 759 ["It is the requirement of additional factfinding that brings the Sixth Amendment into play"]; see also *id.* at p. 756 ["in this context, what the Sixth Amendment requires is necessarily informed by what the state statutory scheme requires"].) Thus, we decline defendant's invitation.

We also reject defendant's attempt to characterize this error as the trial court's failure to obtain a waiver of defendant's constitutional right to a jury trial. Under *Brannon-Thompson*, defendant has no right to a jury trial and hence, no waiver of that right is required. For this same reason, because the trial court properly could impose the upper term in this case under section 1172.75, subdivision (d)(4), defendant was not entitled to a jury trial on the question of whether he should have been given the low term under section 1170, subdivision (b)(6).

C. *Ineffective Assistance of Counsel*

Defendant argues that his trial attorney was ineffective for failing to "(1) request [that] the trial court apply [Senate Bill No. 81]/amended section 1385 specifically to the question of whether to strike the enhancements, rather than the question of whether to strike the strike; (2) request [that] the trial court apply [Assembly Bill No. 124 (2021-2022 Reg. Sess.)]/amended section 1170, in selecting the applicable term from the sentencing triad; (3) ask the court to consider [Assembly Bill No. 518 (2021-2022 Reg. Sess.)]/amended section 654, in deciding which term should serve as the base term; and/or" (4) further request relief under the California Racial Justice Act of 2020 (Stats. 2020, ch. 317). Defendant has not met his burden of demonstrating ineffective assistance of counsel.

14

Defendant's first contention is that counsel rendered ineffective assistance in urging the application of section 1385, subdivision (c), to dismiss defendant's strike conviction. Contrary to defendant's argument, defense counsel explicitly argued in his papers that the trial court should apply the *Romero* rubric, not section 1385, subdivision (c), to his prior strike, which the trial court rejected when it concluded defendant remained within the spirit of the Three Strikes law. This cannot form the basis for an ineffective assistance claim.

Defendant's counsel did not raise the other three arguments before the trial court. As a result, we agree with the People that defendant forfeited these claims. (*In re Sheena K.* (2007) 40 Cal.4th 875, 881.) Defendant alternatively contends he received ineffective assistance of counsel because his counsel failed to argue these other new laws at sentencing. We are not persuaded.

A defendant may not "automatically transform a forfeited claim into a cognizable one merely by asserting ineffective assistance of counsel." (*People v. Thompson* (2010) 49 Cal.4th 79, 121, fn. 14.) Rather, "[t]o establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Samayoa* (1997) 15 Cal.4th 795, 845; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.)

"[R]arely will an appellate record [on its own] establish ineffective assistance of counsel." (*People v. Thompson, supra*, 49 Cal.4th at p. 122.) " 'When a defendant on appeal makes a claim that . . . counsel was ineffective, the appellate court must consider whether the record contains any explanation for the challenged aspects of representation provided by counsel. "If the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to

provide one, or unless there simply could be no satisfactory explanation,' [citation], the contention must be rejected." ' " (*People v. Samayoa, supra,* 15 Cal.4th at p. 845.) " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' [Citations.] '[W]e accord great deference to counsel's tactical decisions' [citation], and we have explained that 'courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925.)

Here, trial counsel was not asked why counsel did not raise the alternative arguments suggested by appellate counsel. We can conceive that trial counsel had legitimate tactical reasons for advancing the theories advanced and for not pursuing others. As noted in defendant's motion, counsel presented alternative resentencing options that would have resulted in sentences of either 7 years, or of 15 years 4 months, as opposed to the 24-year sentence. These arguments included the combination of striking his prior strike under *Romero*, striking enhancements under section 1385, subdivision (c), and a low-term sentence. Counsel in the exercise of professional judgment could have rationally and reasonably concluded that these theories, out of the multitude of possibilities available to defendant, had the best chance of success. Counsel could have also reasonably concluded that advancing other theories may have undermined defendant's chances for success on the theories that were advanced. For example, while counsel urged the trial court to consider whether the crimes were related to defendant's childhood trauma, no evidence in the record ties defendant's current crime to the trauma he experienced as a child. Counsel could have reasonably concluded that the absence of proof regarding this point meant pressing this matter would undermine counsel's other efforts.

16

As to the last contention, i.e., that defense counsel should have pressed the California Racial Justice Act further under section 1385, subdivision (c), we have already concluded the trial court's finding that dismissal of those enhancements would endanger public safety negates any requirement for a further analysis of the mitigating factors. Counsel is not ineffective for failing to advance frivolous or futile motions. (*People v. Thompson, supra,* (2010) 49 Cal.4th at p. 122.)[4]

## DISPOSITION

The judgment is affirmed.

_____\\s\\_____,
Krause, J.

We concur:

_____\\s\\_____,
Hull, Acting P. J.

_____\\s\\_____,
Wiseman, J.[*]

---

[4] For this same reason, we deny defendant's pending request for judicial notice of two reports: Judicial Council of California, Operations and Programs Division, Criminal Justice Services, Disposition of Criminal Cases According to the Race and Ethnicity of the Defendant: 2018 Report to the California Legislature as Required by Penal Code Section 1170.45 (Feb. 2018); California Law Revision Commission committee, Annual Report and Recommendations of the Committee on the Revision of the Penal Code, Government Code Section 8281.5 (Feb. 2020).

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.